MARK DAVID COLEMAN, AN INFANT BY HIS GUARDIAN
*AD LITEM*, MICHAEL COLEMAN, PLAINTIFF-APPEL-
LANT, v. ABRAHAM STEINBERG AND OLGA STEIN-
BERG, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 30, 1968—Decided October 24, 1968.

272

Before Judges SULLIVAN, FOLEY and LEWIS.

*Mr. Paul E. Anderson* argued the cause for appellant (*Messrs. Kovacs, Anderson, Horowitz & Rader,* attorneys).

*Mr. H. Alton Neff* argued the cause for respondents (*Messrs. Carton, Nary, Witt & Arvanitis,* attorneys).

The opinion of the court was delivered by

SULLIVAN, S. J. A. D. This is an appeal from the action of the trial court granting a judgment of involuntary dismissal at the close of the plaintiff's case. The basis for the court's ruling was its determination that plaintiff had not established a jury issue as to defendants' liability. For reasons hereinafter stated we reverse.

The following facts appear from the record. Plaintiff is the infant son of Mr. and Mrs. Michael Coleman who were tenants occupying the first floor in a two-family house owned by defendants. The premises contained a single heating system for the entire building, the furnace being located in the

cellar. Defendants, as part of the leasing agreement, furnished the heat to plaintiff's apartment. There was a thermostat in plaintiff's apartment to control room temperature.

The Colemans had lived in the apartment for about two years prior to the accident which occurred in April 1964. Plaintiff was approximately one year of age at the time and was playing on the living room floor in the apartment. He had crawled into another room when his mother heard him let out a cry and then he began to whimper. She went over to pick him up and found that his foot was caught between the wall and an uncovered pipe which was connected with the radiator. His leg was up against the pipe. When she freed his leg, she noticed that the side of his leg was "completely gone." The first aid squad was called and plaintiff was taken to the hospital where he was treated for burns.

In dismissing the case, the trial court indicated that no evidence of negligence had been presented and that the landlord could not be held responsible for plaintiff's injury.

This State adheres to the common law rule that a landlord owes to his tenant the duty of exercising reasonable care to guard against foreseeable danger arising from the use of the premises in connection with such portions thereof as remain within the landlord's control. *Ellis v. Caprice,* 96 *N. J. Super.* 539, 547 (*App. Div.* 1967). This duty extends to a heating system over which the landlord has retained control. *Monohan v. Baime,* 125 *N. J. L.* 280 (*E. & A.* 1940); *Prosser, Law of Torts,* §63, *p.* 421 (1964); *2 Harper and James, The Law of Torts,* §27.17, *p.* 1518. *Cf. Daniels v. Brunton,* 7 *N. J.* 102, 108–109 (1951).

Plaintiff's injuries were caused by an uncovered pipe running to a radiator. The pipe was part of the central heating system over which the landlord retained control.

There is a split in authority as to whether a landlord may be held responsible for burns suffered by a tenant who comes in contact with exposed pipes in a leased apartment which are part of the central heating system maintained by the landlord. Typical of the cases holding that the landlord does

not retain control over those portions of the heating system within the leased apartment and therefore no liability exists is *Yuppa v. Whittaker,* 88 *R. I.* 214, 145 *A. 2d* 255, 86 *A. L. R. 2d* 788 (*Sup. Ct.* 1958).

Other decisions hold that an exposed pipe in an apartment extending from the central heating system is under the retained control of the landlord. These cases impose a duty on the landlord under the common law rule (*supra*) to exercise reasonable care to maintain the pipes in a reasonably safe condition. *Thompson v. Paseo Manor South Inc.,* 331 *S. W. 2d* 1 (*Mo. App.* 1959). See Annotation, "Landlord's liability for personal injury or death of tenant or his privies from heating system or equipment," 86 *A. L. R. 2d* 791 (1962). New Jersey would appear to follow this latter rule.

In *Monohan v. Baime, supra,* an employee of the tenant was injured by a falling radiator in the leased building. The lease contained a covenant by the landlord to keep in repair, *inter alia,* the heating plant. However, the landlord denied that it reserved and retained control of the heating plant. There, a jury verdict in favor of plaintiff and against the landlord was upheld on the ground that the jury apparently found from the disputed evidence that control of the heating plant, including the radiator, remained in the landlord, thus placing upon him a duty of exercising reasonable care to keep and maintain the same in a manner not to bring harm or injury to those making use of the premises. *Cf. Daniels v. Brunton, supra;* see also *Restatement of Torts 2d,* §361, *comments* (*b*) and (*c*).

*Harenburg v. August,* 119 *N. J. L.* 83 (*E. & A.* 1937), relied on by defendants' landlord herein is not to the contrary. In *Harenburg* plaintiff tenant, who was burned by a radiator while using the toilet in the bathroom, alleged that the landlord had agreed to change the location of the radiator, but failed to do so. At the trial a verdict was directed in favor of defendant landlord. On appeal the Court of Errors and Appeals, after noting the general rule that in

the absence of a continuing nuisance or of an express contract there is no duty on the landlord to alter or repair the demised premises, upheld the directed verdict on the ground that "under the undisputed proofs" the leasing agreement in effect at the time of the alleged injury did not include or contemplate any alteration of the location of the radiator or of any fixture in the bathroom. However, the decision did not consider or discuss any question of retained control.

In the instant case it was shown that the uncovered pipe, readily accessible to infant plaintiff, inflicted a severe burn on his leg. Thus, a jury could have reasonably found that a dangerous condition, arising out of the landlord's maintenance of the heating system, existed. The jury could have also properly found that the landlord failed to exercise reasonable care to guard against the foreseeable danger that a child playing on the floor might come in contact with the pipe and suffer a burn.

In *Totten v. Gruzen*, 52 *N. J.* 202 (1968), which dealt with a similar type of accident, while the appeal involved only the dismissal of plaintiff's claim against the architect, the general contractor and the heating contractor, for designing and installing a heating system with an uncovered pipe leading to a radiator, it is to be noted that the landlord was also sued and was held in the cause by the trial court.

We conclude a jury issue as to liability was presented.

Reversed and remanded for a new trial.

FOLEY, J. A. D. (dissenting). I am obliged to dissent from the conclusion reached by the majority that "a jury issue as to liability was presented."

There is no suggestion that the landlord was under a contractual duty to defendant to repair or alter the pipe in question. Nor is it claimed that the condition which caused the infant plaintiff to be injured constituted a hidden or latent defect, the knowledge of which was solely within the landlord. Compare *Conroy v. 10 Brewster Ave. Corp.*, 97 *N. J. Super.* 75 (*App. Div.* 1967).

The landlord agreed only to supply heat. Neither by reason of express agreement nor by operation of law may it be said that he reserved control of the radiator and appurtenances thereof within the tenant's apartment.

In *Harenburg v. August,* 119 *N. J. L.* 83 (*E. & A.* 1937), the then highest court of the State restated the familiar principle that in the absence of a continuing nuisance, or of an express contract, the relation of landlord and tenant at common law imposed a duty upon the tenant of repairing the demised premises. More recently, in *Bauer v. 141–149 Cedar Lane Holding Co.,* 24 *N. J.* 139, 145 (1957), our present Supreme Court, citing the *Harenburg* case with approval, restated the rule that in the absence of an agreement to do so a landlord is under no obligation to a tenant to make repairs to remedy defects in the leased premises that either existed at the beginning of the tenancy or developed thereafter.

In this case the majority places reliance in *Monohan v. Baime,* 125 *N. J. L.* 280 (*E. & A.* 1940), where an employee of a tenant was injured by a falling radiator in a leased building. It may be of some interest to note that *Monohan,* decided only three years after *Harenburg* and by a substantial complement of the judges who decided *Harenburg,* did not even mention that case. The reason, I think, is obvious — the two cases dealt with differential factual complexes. In *Monohan* the lease expressly provided that the landlord was to keep in repair the exterior parts of the building, including the roof, conductor pipes, sidewalks, plate glass show windows and the *heating plant,* which latter appurtenance was italicized in the court's opinion. *Monohan* went no further than to hold that there were disputed questions of fact with respect to the issue of retention of control by the landlord which required submission to the jury.

As I see it, the majority by its decision, has extended the landlord's liability beyond the boundaries surveyed and fixed by the highest courts of this State. Whether or not its efforts in this respect are or are not commendable in point of legal

philosophy is not for me to say. However, I strongly feel that this approach, intruding as it does upon the established law, has no place in the decisional processes of this intermediate appellate court.

I would therefore affirm the trial court.